IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| PRL, LLC, | ) | CASE NO. 08-80392-G3-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |

## MEMORANDUM OPINION

The court has held a hearing on the Motion of K-Max, Inc. to Dismiss Chapter 7 Case (Docket No. 17). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

PRL, LLC ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 28, 2008. Robbye R. Waldron is the Chapter 7 Trustee.

In the instant motion, K-Max, Inc. ("K-Max") seeks dismissal for cause. K-Max contends that there are no assets available for distribution to creditors, and that, because Debtor is not an individual, it is not entitled to discharge. Thus, no purpose is served by maintaining the instant case.

Kevin Kilgore, the president of K-Max, testified that, beginning in July, 2005, he had conversations with Larry Caldwell, Ryan Caldwell, and Paul Hamm, as representatives of Debtor.  He testified that, beginning in January, 2007, K-Max contracted with Debtor and PRL I Ltd., an affiliate of Debtor, for payroll services.  He testified that K-Max would communicate to Hamm or Larry Caldwell the salary, wages, and hours worked for each employee.  Debtor and its affiliate were to prepare and file tax reports, collect the tax due through an electronic funds transfer, and forward trust fund tax payments to the United States Internal Revenue Service ("IRS") and Texas Workforce Commission.  He testified that Larry Caldwell became the registered agent for K-Max and SHFK, LLC, another entity in which Kilgore owns an interest.

Kilgore testified that he first became aware that funds were not forwarded to IRS when a representative of IRS visited K-Max's business premises in December, 2007.

Kilgore testified that he immediately prepared to file suit against Caldwell.  K-Max filed suit, in the 80th Judicial District Court of Harris County, Texas.  Kilgore testified that, in depositions of Larry Caldwell and Ryan Caldwell in connection with the state court suit, Larry Caldwell and Ryan Caldwell announced that they intended to assert their Fifth Amendment right against self-incrimination as to each question they were

asked.

Kilgore testified that Larry Caldwell agreed, in agreements submitted to the state court under Tex. R. Civ. P. 11, to obtain a home equity loan on his home and also to sell his interest in a corporation, and pay the proceeds to K-Max. He testified that K-Max received the proceeds of refinancing of the loan on Larry Caldwell's home.

Debtor's schedules in the instant case identify as the only property of the bankruptcy estate its interest in its affiliate, PRL I Ltd., and receivables owed to it by PRL I Ltd., the $46,000 paid by Larry Caldwell to K-Max, its interests in litigation against K-Max and others, and $3,000 in computer equipment. Except for small claims for telephone service and insurance, all of the creditors listed on the schedules are parties to the litigation filed in state court.[1]

Although a printed representation of Larry Caldwell's signature appears on the petition in the instant case, the printed representation of his signature does not appear on the schedules and statement of financial affairs. Larry Caldwell did not appear at the hearing on the instant motion. Debtor called no witnesses in defense of the instant motion.

---

[1] The court notes that Sterling Trust is listed as a creditor with the notation "FBO Paul Hamm." Kilgore testified that Sterling Trust is owned by Hamm. Hamm is a party to the litigation filed in state court.

Dismissal is opposed by the Chapter 7 Trustee and by Hamm.

### Conclusions of Law

Section 707(a) of the Bankruptcy Code provides:

The court may dismiss a case only after notice and a hearing, and only for cause, including--

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 532, but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

Section 707(a) does not provide an exhaustive list of factors to be considered in determining whether good cause exists to dismiss a bankruptcy petition.  The court must balance the equities and weigh the benefits and prejudices of a dismissal. Matter of Atlas Supply Corp., 857 F.2d 1061 (5th Cir. 1988).

Courts have dismissed Chapter 7 cases filed by non-individuals, where there were no significant assets to distribute to creditors.  See e.g., In re American Telecom Corp., 304 B.R 867 (Bankr. N.D. Ill. 2004); In re Hydratech Utilities, Inc., 384 B.R. 612 (Bankr. M.D. Fla. 2008); In re Int'l Zinc Coatings & Chem. Corp., 355 B.R. 76 (Bankr. N.D. Ill. 2006); In re Ripley &

Hill, P.A., 176 B.R. 596 (Bankr. M.D. Fla. 1994).

In the instant case the balancing of the equities favors dismissal.  Nearly all in number of creditors, and nearly all of amounts owed to creditors identified in the schedules, are parties to the state court case.  The only assets which appear available for distribution to creditors are of inconsequential value.[2]  There is no discharge available to Debtor, because it is not an individual.  See 11 U.S.C. § 727(a)(1).  There is little to be accomplished in the instant case, except the incurring of additional administrative expenses.  The court concludes that the instant Chapter 7 case should be dismissed.

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned case.

Signed at Houston, Texas on January 8, 2009.

/s/ Letitia Z. Clark
_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

---

[2] The court notes that Debtor scheduled $46,000 received by K-Max as an asset (presumably as a recoverable preference).  The evidence before the court is that the funds paid to K-Max were paid by Larry Caldwell, individually, from funds received from a home equity loan Caldwell procured with respect to his home.